*233 OPINION OF THE COURT
Eugene L. Nicandri, J.
On April 16, 1999, the defendant was arrested in the Town of Massena, St. Lawrence County, for assault in the second degree (Penal Law § 120.05 [2]).
After arraignment in the local criminal court, defendant was held over for Grand Jury action on April 21, 1999.
While awaiting Grand Jury presentment, her assigned counsel from the Public Defender’s office reported to the court in June 1999 that their efforts to communicate with the defendant were fruitless and that they believed she was incapable of assisting with her defense.
On June 29, 1999, defendant was indicted on the assault in the second degree charge. She has never been arraigned on that indictment.
After an initial screening at the correctional facility wherein she was being held, this court on June 29, 1999 ordered a fitness to proceed examination under CPL 730.20. Pursuant to that order she was in fact examined by two mental health evaluators in July 1999. Both examiners opined that defendant was not fit to proceed.
Based upon the concurring findings of the two examiners, and neither the prosecutor nor defense counsel requesting a hearing, the court on July 28, 1999 found defendant in fact not fit to proceed, and ordered her commitment to the custody of the Commissioner of the Office of Mental Hygiene (OMH) or of the Office of Mental Retardation and Developmental Disabilities (OMRDD) for care and treatment in an appropriate facility designated by the appropriate Commissioner for a period not to exceed one year.
On October 15, November 23, December 23, 1999 and January 4, 2000, defendant was evaluated by two psychiatric examiners at the Central New York Psychiatric Center. By reports dated October 18, 1999 and January 4, 2000, respectively, defendant was again found not fit to proceed. However, both examiners agreed that her lack of fitness was not related to any psychiatric illness, but related to intellectual deficiencies and cultural barriers. It was their opinion that no psychiatric treatment is available that could restore the defendant to allow her to participate meaningfully in the pending criminal proceedings. The psychiatrists recommended placement with the Office of Mental Retardation and Developmental Disabilities.
*234 Based upon the latter psychiatric evaluations, the court on January 24, 2000 entered a second order of commitment, this time to OMRDD for a period of not in excess of one year to expire with the initial order of July 28, 1999.
On January 26, 2000, the Office of Mental Retardation and Developmental Disabilities reported that since defendant was not diagnosed as mentally retarded, they would not be able to take her.
The matter has languished since then, and the defendant remains in the custody of the Commissioner of OMRDD.
On April 11, 2000, the County Attorney of St. Lawrence County wrote to the court, Commissioners of OMH and OMRDD, St. Lawrence County Director of Community Services, counsel for the People and defendant, the County Sheriff and the County Administrator, citing the County of St. Lawrence paying $80,000 per year for the defendant’s commitment at the Central New York Psychiatric Center; the inability of the holding facility to provide treatment; the lack of a diagnosis, and requesting the court to conduct further proceedings based upon Jackson v Indiana (406 US 715 [1972]).
STATUTORY SCHEME
CPL article 730 provides a procedure for determining whether or not a defendant in a criminal case is incapacitated, as defined in CPL 730.10 (1), meaning that she lacks capacity to understand the proceedings against her or to assist in her defense. This is not a determination of mental illness, and is also completely unrelated to issues associated with the insanity defense and its concern with the defendant’s mental capacity at the time of commission of the crime. (See, Preiser, Practice Commentaries, McKinney’s Cons Laws of NY, Book 11A, CPL 730.10, at 442.)
CPL 730.20 covers the mechanics of obtaining the first set of evaluations and reports.
CPL 730.30 concerns what it takes to trigger the need for evaluations, and calls for a hearing either when the reports are not unanimous or where the court itself feels that one is necessary.
CPL 730.50 governs the issue of fitness to proceed in the context of an indicted defendant. Under CPL 730.50 (1) this court has made a determination (in two different, differently dated orders) that defendant is an incapacitated person. This requires the court to “issue a final order of observation [misde *235 meanor case] or an order of commitment [felony case].” (CPL 730.50 [1].) The order is one of commitment to “the Commissioner” (meaning Commissioner of either OMH or OMRDD) for not more than one year.
Under CPL 730.50 (2) the Commissioner holding defendant must, within 60 days of expiration of the temporary commitment order (CPL 730.50 [1]), apply for a retention order if the Commissioner thinks defendant is still incapacitated. Application must be on official forms, on notice to defendant and to Mental Hygiene Legal Service. In response the court may, on its own motion, or must on request of defendant, conduct a hearing on the need for retention, if a demand is made within 10 days of receipt of notice of the retention application. After the hearing, the court either finds defendant not incapacitated, and the criminal case proceeds, or incapacitated, and authorizes a further retention/custody by the Commissioner for up to one year. This one-year retention may be repeated once, for an additional year.
Subsequent orders of retention may be for up to two years each, subject to the same application, notice and hearing rules. The maximum period of all temporary commitments/retentions combined is two thirds the maximum period of incarceration for the highest class of felony on which defendant is indicted. If defendant is in the Commissioner’s custody when that time limit is reached, the Commissioner must so certify to the court, and to the District Attorney and defendant that defendant was in his custody on such date. Upon receipt of the certification the court must dismiss the indictment, which constitutes a bar to reprosecution on the indicted charge(s). (CPL 730.50 [4].)
Although defendant has a due process right to be released after a reasonable time necessary to determine whether there is a substantial probability that she will attain capacity to proceed to trial in the foreseeable future, she does not thereby have an automatic right to dismissal of the charge, given the public’s interest in the court having continuing jurisdiction to monitor her condition and location. The dismissal right is governed by the statutory timetable.
But the right to apply for release and to have the court determine her prospects of regaining capacity to proceed in the near future may not be compelled to await the statutory timetable. (People v Schaffer, 86 NY2d 460 [1995].) The Schaffer Court rejected the defense argument that Jackson v Indiana (supra) mandated dismissal of the indictment on constitutional grounds when defendant is held pursuant to article 730 for *236 extended periods of evaluation and possibly treatment. But the Court affirmatively read the Jackson due process hearing mandate into CPL article 730, holding that: “a defendant in this State adjudicated incompetent is entitled to be released or civilly committed pursuant to article 9 of the Mental Hygiene Law upon a finding that the defendant’s chances of achieving competency are ‘minimal’ or ‘nonexistent’ (406 US, at 727) * * * The vindication of a permanently incompetent defendant’s constitutional rights under Jackson v Indiana cannot be compelled to await the statutory commitment periods provided for in article 730 (see, CPL 730.50 [1]).” (People v Schaffer, 86 NY2d, at 468.)
Finally the Schaffer Court observed that because of the erroneous dismissal in the lower courts the issue of defendant’s entitlement either to be released or civilly committed was never decided, despite a three-day fact-finding hearing.
The information presently available to this court strongly suggests that the defendant is anxious to be released, without being knowledgeable about the legal context of her detention. The various treatment professionals who have evaluated defendant appear to concur that she is not mentally ill nor mentally retarded, nor developmentally disabled. But those are not the issues before this court.
The court needs to determine whether defendant, under CPL 730.10, is incapacitated in the sense that she can neither understand the proceedings against her nor assist in her defense, and, if so, whether that condition is thought likely to change in the foreseeable future. If the answer to the latter question is that her condition is not deemed likely to change, then, under Schaffer and Jackson (supra), she is entitled to have this court make such a determination. The necessary result of a finding after such a hearing is a determination either to release defendant or commence civil commitment proceedings against her under article 9 of the Mental Hygiene Law. Under that statute, as the court understands it, the focus would shift to the question whether the defendant is mentally ill and is likely to be a danger to herself or others. Such a determination can lead, subject to periodic medical and judicial review, to an involuntary civil commitment.
Since the first one-year statutory retention is still in effect, and more than 60 days remain before its expiration, under the article 730 timetable the Commissioner of OMRDD, as defendant’s custodian, does not yet have an obligation to seek release or retention. But under Jackson (supra), the defendant *237 may only be held for a reasonable period of time to determine whether she is likely to become fit to proceed. Since the treatment professionals have already expressed doubt about this likelihood, though only informally, the court finds that Jackson’s protections have been called into play, requiring a hearing. People v Betances (176 Misc 2d 66 [Sup Ct, NY County 1998]), which denied Jackson relief in the context of an article 730 continuation of evaluative custody, does not compel a different result. In that case, unlike the one here, the court was not presented with a situation wheré the treatment professionals expressed doubt that defendant would ever meet the CPL standard of fitness to proceed.
Based upon the foregoing, it is determined:
(1) that since defendant has not as yet been arraigned on the indictment, that the District Attorney prepare an order to produce, so that defendant (even if not fit to proceed) may be arraigned; and
(2) that counsel for the defendant move on notice to the prosecution, the Commissioners of OMH and OMRDD, the Director of Community Health Services for St. Lawrence County, Mental Hygiene Legal Service, and the St. Lawrence County Sheriff for a hearing under the requirements of the Jackson v Indiana case (supra), which must be read into the requirements of CPL article 730.